# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### -Southern Division-

—————

**Jerry L. Bibbs,**

      Plaintiff,          Case No. 2:13-cv-10362
                           Honorable Lawrence P. Zatkoff
-v-                      Magistrate Judge Mona K. Mazjoub

**David Allen**,          **Nature of Case:**
                        42 U.S.C. §1983
          Defendant.      U.S.C.A. 4 Excessive Force

                                        /

The F. L. Gibson Group PC         O'Connor DeGrazia Tamm&O'Connor PC
**Fred L. Gibson P39530**        **James E. Tamm P38154**
Attorney for Plaintiff            Attorney for Defendant
17001 19 Mile Rd., Ste 1-C     40701 Woodward Ave., Ste 105
Clinton Twp., MI 48038-4867    Bloomfield Hills MI 48304-5078
586-416.2520 / 586-464.1629[fx]  248.433.2000 / 248.433.2001 [fx]
attorneyfgibson@gmail.com      jetamm@odtlegal.com
                                        /


## PLAINTIFF'S RESPONSE OPPOSING
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

—————

## BRIEF IN SUPPORT OF PLAINTIFF'S RESPONSE

—————


- CERTIFICATE OF SERVICE -

Plaintiff opposes Defendant's Motion and responds accordingly:

**1.** *Plaintiff's Complaint alleges an excessive force claim under 42 U.S.C. §1983 against Defendant David Allen, a City of Center Line Police Officer ("Officer Allen").*

**Plaintiff's Response: Admitted.**

**2.** *Officer Allen is entitled to qualified immunity because a clearly established constitutional right was not violated.*

**Response: Denied.** After being stopped for a vehicle equipment violation, posing no threat to Allen or others, not resisting or attempting to evade arrest, Allen tased Bibbs six times totaling 38 seconds within an 87 second time span [**Ex1**]; Five of the taserings after Bibbs fell to the ground his body face down on the cement, limbs splayed out, subdued, not resisting. Therefore, Allen's repeated use of the taser amounted to force that was excessive under law clearly established well before the June 2011 incident that is the subject of Plaintiff's complaint. *Austin v Redford Twp Police Dep't*, 690 F3d 490, 496 (6th Cir 2012). *Grawey v Drury*, 567 F3d 302, 314 (6th Cir 2009). See also *Lyons v City of Xenia*, 417 F3d 565, 575 (6th Cir 2003)(quoting *Graham v Connor*, 490 US 386, 396 (1989)).

**3.** *On June 24, 2011, Plaintiff was stopped by Officer Allen for driving with a cracked windshield and no license plate. (Exhibit A, Deposition Transcript of David Allen, p. 20).*

**Plaintiff's Response: Admitted**. Bibbs does not contest the basis for his contact by Allen for purposes of this lawsuit. Though it is questionable Allen could see a crack in the windshield of Bibbs car while driving behind it in the dead of night. Allen later admitted the vehicle had a license plate affixed to the rear window and was properly registered. [Allen transcript **Ex2** p20 ln5 to p21 ln21].

**4.** *Officer Allen asked Plaintiff to exit his vehicle, however Plaintiff did so with his hands concealed in his pockets, and Officer Allen ordered him to remove his hands from his pockets. (Exhibit A, pp. 31-32).*

2

**Response: Admitted**.  With the caveat that Bibbs affirmed he got out of his car without being asked to do so [Bibbs transcript **Ex3** p58 ln24 to p59 ln3].

**5.**  *Plaintiff admitted that he did not respond to  Officer Allen's  initial order to remove his hands from his pockets, and stated that he was "fiddling" with his pockets. (Exhibit B, Deposition Transcript of Jerry Bibbs, p. 60).*

**Response: Admitted**.

**6.**  *Plaintiff then removed his left hand from his pocket and turned his body so that Officer Allen was unable to view Plaintiff s right hand. (Exhibit A, p. 32).*

**Response: Denied** that he turned his body so Allen could not see his right hand [**Ex2** p32 ln4 to p33 ln7]. Bibbs removed both hands from his pockets, not just one [**Ex3** p63 ln9-10].

**7.**  *Officer Allen observed the Plaintiff turn and start to walk away and move between his vehicle and the police car. (Exhibit A, pp. 34, 36).*

**Response: Denied**.  Bibbs did not walk anywhere [**Ex3** p67 ln2-ln12]; Bibbs never left his original position adjacent to the rear of the driver's door of his car [**Ex3** p69 ln19 to p70 ln24]. Allen affirmed that is where Bibbs was standing [**Ex2** p35 ln4-ln10].  And that he ended up between the back of his car and the front of the police car only after being dragged there from the driver's side of his car, after being tased multiple times [**Ex3** p70 ln21-ln24].

**8.**  *Officer Allen ordered the Plaintiff to take his right hand  out of his pocket, however Plaintiff refused and instead continued to walk away and place an unknown white substance in his mouth. (Exhibit A, pp. 40-41).*

**Response: Denied in part.**  At no time did Bibbs walk away from Allen [**Ex3** p67 ln2-ln12]. Bibbs removed both hands from his pockets [**Ex3** p63 ln9-10], as he stood adjacent to the rear of the driver's door of his car [**Ex3** p69 ln19 to p70 ln24]. Bibbs **Admits** after taking both hands out of his pockets and extending them out from his body that he put the remnants of a marijuana blunt, wrapped in a white tissue, into his

mouth [**Ex3** p63 ln11 to p64 ln25].

**9.**   *Plaintiff admitted that he turned to the right and put marijuana wrapped in a white tissue into his mouth. (Exhibit B, pp. 63-64).*

**Response: Admitted** that he turned his head to the right and put the remnants of a marijuana blunt, wrapped in a white tissue, into his mouth [**Ex 3** p63 ln11 to p64 ln25]; That he turned his head only because his attention was drawn to a car going down the street [**Ex3** p69 ln19-25].

**10.**   *Based upon the Plaintiff's actions, Officer Allen believed that the Plaintiff was attempting to walk away and that he was ingesting cocaine. (Exhibit A, p. 41).*

**Response:   Denied.**   Bibbs did not try to walk away at any time [**Ex3** p67 ln2-ln12]. Allen can state what he 'believed', however, the facts speak for themselves.

**11.**   *Officer Allen ordered Plaintiff to not put the substance in his mouth and to remove it from his mouth. (Exhibit A, p. 42).*

**Response: Denied**. Bibbs was shot with the Taser, without warning, as soon as he put the substance into his mouth [**Ex3** p66 ln21 to p68 ln21]. It was only after Bibbs had been tased and had fallen to the ground that Allen yelled to him to 'spit it out' [**Ex3** p65 ln9 to p66 ln16].

**12.**   *Plaintiff refused to take the substance out of his mouth and continued to walk away so Officer Allen again ordered Plaintiff to take it out of his mouth or he would be tased. (Exhibit A, p. 42).*

**Response: Denied**.   Bibbs was shot with the Taser as soon as he put the substance into his mouth, without any forewarning that he was going to be tased [**Ex3** p66 ln21 to p68 ln21]. It was only after he was tased and on the ground that Allen yelled to Bibbs to 'spit it out' [**Ex3** p65 ln9 to p66 ln16].

**13.**   *Plaintiff failed to follow the orders so Officer Allen deployed his taser. Only one of the two taser probes impacted the Plaintiff. (Exhibit A, p. 43).*

**Response: Denied**.   Allen affirmed his report of the incident was true, accurate and

complete [**Ex2** p 12 ln21 to p13 ln15]. Allen wrote that *'one dart struck Bibbs near his left waist area'* [**Ex4** p5]. He did not report that the other dart did not impale Bibbs.  Allen made this spurious self-serving assertion in his deposition some 2 ½ years after the fact [**Ex2** p43 ln2-12]. Bibbs reported he was shot with the Taser, <u>without warning</u>, as soon as he put the substance into his mouth [**Ex3** p66 ln6 to p68 ln21] and both barbed prongs tore into his left side '*about an inch or two from my* (sic) *privates* [**Ex3** p71 ln11-18].  Bibbs immediately fell helpless to the ground [**Ex3** p66 ln6 to p67 ln12; p68 ln5-p69 ln1]. Dempsey, who arrived later, yanked both prongs out of Bibbs body [**Ex3** p76 ln23 to p77 ln10].

**14.**   *In order for the taser to be effective, both probes must be attached to the individual to complete an electrical circuit. (Exhibit C, Affidavit of William Dempsey).*

**Response: Admitted**. When the taser is fired both probes must strike to complete the circuit. If only one probe has made contact, using the 'drive-stun' on any area of the body will complete the circuit and cause Neuromuscular Incapacitation (NMI) [see **ExE** attached to Def's Brief].  However, in this case, both probes impaled Bibbs.

**15.**   *The Plaintiff then got up and attempted to walk away again and also continued to place the white substance into his mouth. (Exhibit A, pp. 45-46).*

**Response: Denied.**   By stating '*The Plaintiff got up ...'* Allen admits Bibbs immediately went to the ground after being tased - confirming both prongs tore into Bibbs, <u>completing the circuit</u> [**Ex2** p43 ln2-ln10; p45 ln20 to p46 ln7]. Bibbs affirms he was barely able to move, let alone get up, after the first tasing, stating it "*clearly knocked me off my feet*". "*Everything just tensed up, you know, everything. Since I was on my back its like saliva was, like, choking me, so all I can do is just roll over on my stomach*"[**Ex3** p66 ln6-ln20; p68 ln5 to p69 ln1; p74 ln16-18].

**16.**   *Officer Allen again ordered the Plaintiff to stop, but Plaintiff refused so Officer Allen again pulled the trigger on the taser. (Exhibit A, p. 46).*

**Response: Admitted in part**. After being struck with the taser probes the first time Bibbs immediately fell to the ground and other than rolling over onto his stomach, was unable to move after that [**Ex3** p66 ln16-20; p68 ln5 to p69 ln1; p74 ln16-18].

**17.** *Plaintiff then attempted to crawl away and continued to place the white substance in his mouth. (Exhibit A, pp. 47-49).*

**Response: Denied**. By stating *'Plaintiff then attempted to crawl away'* Allen affirms Bibbs was on the ground, again, after being tased the second time - as a direct result of both prongs having impaled Bibbs, <u>completing the circuit</u> [**Ex2** p46 ln15 to p47 ln15]. Bibbs stated after being struck with the taser probes the first time he immediately fell to the ground and was not able to move [**Ex3** p66 ln16-20]. Allen then tased Bibbs five more times in quick succession [**Ex1**].

**18.** *Officer Allen again ordered Plaintiff to take the substance out of his mouth but he refused so Officer Allen conducted two drive stuns on him. (Exhibit A, pp. 48-50).*

**Response: Denied in part**.  Bibbs remembers Allen yelling at him to 'spit it out', but only after being tased [**Ex3** p 65 ln12 to p66 ln14]. Allen then tased Bibbs five more times [**Ex1**]. And he did so as Bibbs lay face down on the ground, arms extended from his body in a 'T' fashion, subdued, unable to move [**Ex2** p48 ln10 to p51 ln4]. Trying to explain why he chose to document only four of the six taser firings in his report [**Ex4**] Allen stated: "*Perhaps, sir, maybe in the heat of battle ...I inadvertently went ahead and pulled the trigger. My report is accurate to what I recall*" [**Ex2** p61 ln22 to p62 ln7]. In other words, Allen was out of control. The Taser's internal computer was not subject to such emotion, reporting six firings totaling 38 seconds within a span of 87 seconds [**Ex1**].

**19.** *Only the last use of the taser was effective and resulted in a completed circuit which delivered a charge. (Exhibit C).*

**Response: Denied**. Officer Dempsey's affidavit [**ExC** attached to Defendant's Brief] is as self-serving and deficient as Allen's reporting of the incident [**Ex4**].  Dempsey

arrived on scene after the tasing was done and after Bibbs was handcuffed [**Ex2** p51 ln5-11; p54 ln 3-10] and only knew what Allen told him - simply that he had deployed his taser [Dempsey Transcript **Ex5** p11 ln7-15, ln 23 to p12 ln22; p13 ln25 to p14 ln9]. Because he was not present during the repeated tasings, Dempsey is not able to testify whether or not both probes struck Bibbs, or whether one of the probes may have became dislodged when Bibbs rolled over onto his stomach after being tased the first time [**Ex3** p66 ln16-20]. And certainly is not able to certify the effect each Taser firing had on Bibbs. Especially considering Dempsey did not know Bibbs had been tased more than once [**Ex5** p11 ln23 to p12 ln22; p13 ln25 to p14 ln9] and therefore would not and could not have known of this new assertion by Allen that only 1 of 2 prongs initially impacted plaintiff. And of course, Dempsey did not write a report.

**20.** *Plaintiff was then subdued and arrested for driving while license suspended and resisting and obstructing an officer.*

**Response: Admitted in part**. Plaintiff had already been subdued, was not mobile and barely responsive after just the first tasing [**Ex3** p75 ln16 to p76 ln18; p77 ln21 to p78 ln3].

**21.** *Officer Allen is entitled to qualified immunity because his conduct in using the taser on the Plaintiff did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v Callahan, 555 U.S. 223, 231 (2009).*

**Response: Denied**. Defendant chooses to ignore the district court's holding that the law was clear in this Circuit, well before the Bibbs June 2011 incident, that the use of force, including a Taser, on a suspect who has been subdued is unreasonable and a violation of a clearly established right. *Austin v Redford Twp Police Dep't*, 690 F3d 490, 496 (6th Cir 2012). *Grawey v Drury*, 567 F3d 302, 314 (6th Cir 2009). Defendant's cite to *Pearson* is a red herring. *Pearson* addresses the issue of officers'

warrantless entry into and subsequent search of a home.  The issue of use-of-force is non-existent and not an issue in that case.

22.   *The use of the taser was objectively reasonable in light of the facts and circumstances involved in the incident that occurred on June 24, 2011, since Plaintiff refused to comply with the Officer Allen's orders, posed a threat to Officer Allen and himself, and attempted to flee the scene. Graham v Connor, 490 U.S. 386, 388 (1989).*

**Response: Denied**. Defendant chooses to ignore the facts. Bibbs had been stopped for a minor traffic violation, was not combative, was not attempting to flee, posed no threat to anyone, yet he was tased repeatedly while face down, subdued, splayed out on the ground. Therefore, Allen's conduct was objectively unreasonable and violated law that was clearly established well before June 2011.  *Austin v Redford Twp Police Dep't*, 690 F3d 490, 496 (6th Cir 2012). *Grawey v Drury*, 567 F3d 302, 314 (6th Cir 2009). See also *Lyons v City of Xenia*, 417 F3d 565, 575 (6th Cir 2003)(quoting *Graham v Connor*, 490 US 386, 396 (1989)).

23.   *Additionally, at the time of the incident there was no clearly established constitutional right prohibiting the use of a taser on an individual who failed to follow a police officer's orders, posed a threat, and attempted to flee the scene. See Hagans v Franklin County Sheriff's Office, 695 F.3d 505, 509 (6th Cir. 2012); Williams v Ingham, 373 Fed. Appx. 542, 548 (6th Cir. 2010) (Exhibit D).*

**Response: Denied**. *Hagans* addressed the use-of-force issue involving tasers as this Court has addressed use-of-force issues for years, citing, for example: *Kijowski v City of Niles*, 372 Fed Appx 595 (6th Cir 2010), *Landis v Baker*, 297 Fed Appx 453 (6th Cir 2008), and *Roberts v Manigold*, 240 Fed Appx 675 (6th Cir 2007) - **[Ex's L, M, and N attached to defendant's brief**] all taser cases involving similar fact scenarios as Bibbs.  In each case the Court deemed the actions of the police excessive and in violation of clearly established law. As for the *Williams* case, it has no applicability here. In that 2005 incident, *Williams,* driving a stolen car, led officers on two high-

speed chases. When finally stopped Williams refused to get out of the car, moved toward center of car, broke one officer's finger while avoiding removal and continued to hold his hands under his body to avoid handcuffing once he was removed. Again, Defendant chooses to ignore the facts of this case. Bibbs had been stopped for a minor traffic violation, was not combative, was not attempting to flee, posed no threat to anyone, yet he was tased repeatedly while face down, subdued, splayed out on the ground. Therefore, Allen's conduct was objectively unreasonable and violated law that was clearly established well before June 2011. *Austin v Redford Twp Police Dep't*, 690 F3d 490, 496 (6th Cir 2012). *Grawey v Drury*, 567 F3d 302, 314 (6th Cir 2009). See also *Lyons v City of Xenia*, 417 F3d 565, 575 (6th Cir 2003)(quoting *Graham v Connor*, 490 US 386, 396 (1989)).

**24.** *Pursuant to E.D. Mich. LR 7.1 (a)(2)(A), a conference between attorneys in this matter occurred on January 24, 2014 where the Defendant's attorney explained the nature of the motion and its legal basis but Plaintiff s attorney did not concur in the relief sought.*

**Response: Admitted.**

**RELIEF REQUESTED**:

As there exists a genuine issue of material fact as to the Fourth Amendment Excessive Force claim asserted against the Defendant, the Court is precluded from granting the relief requested by the Defendant. On that basis, Mr. Bibbs respectfully requests the Court enter an Order denying the relief sought by the Defendant, allowing for the adjudication of the pending claims by the trier of fact.

Mr. Bibbs relies upon the attached Brief and Exhibits in support of his position.

Respectfully,

s/ Fred L. Gibson
Fred L. Gibson P39530
Counsel for Plaintiff
attorneyfgibson@gmail.com

9

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### -Southern Division-

**Jerry L. Bibbs,**

   Plaintiff,     Case No. 2:13-cv-10362
             Honorable Lawrence P. Zatkoff
             Magistrate Judge Mona K. Mazjoub

-v-

**David Allen**,        **Nature of Case:**
             42 U.S.C. §1983
   Defendant.     U.S.C.A. 4 Excessive Force

                          /

The F. L. Gibson Group PC    O'Connor DeGrazia Tamm&O'Connor PC
**Fred L. Gibson P39530**     **James E. Tamm P38154**
Attorney for Plaintiff      Attorney for Defendant
17001 19 Mile Rd., Ste 1-C    40701 Woodward Ave., Ste 105
Clinton Twp., MI 48038-4867   Bloomfield Hills MI 48304-5078
586-416.2520 / 586-464.1629[fx]  248.433.2000 / 248.433.2001 [fx]
attorneyfgibson@gmail.com    jetamm@odtlegal.com

                          /

## BRIEF IN SUPPORT OF PLAINTIFF'S RESPONSE OPPOSING

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## **TABLE OF CONTENTS**

COUNTER-STATEMENT OF ISSUES PRESENTED. . . . . . . . . . . . . . . . . . . 12

CONTROLLING OR MOST APPROPRIATE AUTHORITY. . . . . . . . . . . . . 13

INDEX OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

I.     NATURE OF ACTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

II.    COUNTER-STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . 16

III.   STANDARD OF REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

IV.    LAW AND ANALYSIS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

       **A.** Summary Judgment Is Not Warranted on Plaintiff's U.S.C.A. 4  Excessive

       Force Claim Against Defendant . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

> Bibbs had been stopped for a minor traffic violation, was not combative, was not attempting to flee, posed no threat to anyone, yet was tased repeatedly by Allen even after Bibbs was face down, subdued, splayed out on the ground. Therefore, Allen's conduct was objectively unreasonable and violated law that was clearly established well before June 2011.

       **B.** Summary Judgment Is Not Warranted on Plaintiff's U.S.C.A. 4  Excessive

       Force Claim Against Defendant on the Basis of Qualified Immunity. . . . . 27

> Because Officer Allen violated Mr. Bibb's constitutional right regarding the use of excessive force, and the law regarding this claim was clearly established on the date of the violation, Allen is not entitled to the protective cloak of qualified immunity for his actions.

V.     CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

VI.    CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

## <u>COUNTER-STATEMENT OF ISSUES PRESENTED</u>

**A.**     Bibbs had been stopped for a minor traffic violation, was not combative, was not attempting to flee, posed no threat to anyone, yet was tased repeatedly by Allen even after Bibbs was face down, subdued, splayed out on the ground. Was Allen's conduct objectively unreasonable and violate law that was clearly established well before June 2011?

Plaintiff's Response:        'YES'


**B.**     Because Officer Allen Violated Mr. Bibb's Constitutional Right Regarding the Use of Excessive Force, and the Law Regarding this Claim Was Clearly Established on the Date of the Violation, is Allen Entitled to the Protective Cloak of Qualified Immunity for His Actions?

Plaintiff's Response:        'NO'

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

**EXCESSIVE FORCE:**

*Austin v Redford Twp. Police Dep't*.
    690 F3d 490, 497-98 (6th Cir 2012)

*Baker v City of Hamilton*
    471 F3d 601 (6th Cir 2006)

*Graham v Connor*
    490 US 386, 388 (1989)

*Grawey v. Drury*
    567 F3d 302, 314 (6th Cir 2009)

*Phelps v Coy*
    286 F3d 295, 301 (6th Cir 2002)

*Shreve v Jessamine Cty. Fiscal Court*
    453 F3d 681, 687 (6th Cir 2006)

*Solomon v Auburn Hills Police Dep't*
    389 F3d 167, 173 (6th Cir 2004)

**QUALIFIED IMMUNITY:**

*Anderson v. Creighton*
    483 US 635, 640 (1987).

*Harlow v Fitzgerald*
    457 US 800, 818 (1982)

*Saucier v. Katz*
    533 US 194, 200-01 (2001).

# INDEX OF AUTHORITIES

## U. S. Supreme Court

*Anderson v. Creighton*............................................................22
    483 US 635, 640 (1987)

*Anderson v. Liberty Lobby, Inc.*..................................................21
    477 US 242, 248 (1986)

*Dickhaus v Champion*............................................................22
    544 US 975 (2005)

*Graham v. Connor*.....................................................2, 8, 9, 23, 24
    490 US 386, 396-97 (1989))

*Harlow v Fitzgerald*.............................................................27
    457 US 800, 818 (1982)

*Matsushita Elec. Indus. Co. V Zenith Radio Corp*.................................22
    475 US 574, 587 (1986)

*Mitchell v. Forsyth*.............................................................27
    472 US 511, 526 (1985)

*Saucier v. Katz*.............................................................22, 27
    533 US 194, 200-01 (2001)


## Sixth Circuit

*Austin v Redford Twp. Police Dep't*..............................2, 7, 8, 9, 24
    690 F3d 490, 497-98 (6th Cir 2012)

*Baker v City of Hamilton*........................................................23
    471 F3d 601 (6th Cir 2006)

*Burchett v. Kiefer*..............................................................23
    310 F3d 937, 944 (6th Cir 2002)

*Bouggess v Mattingly*............................................................27
    482 F3d 886, 896 (6th Cir 2007)

*Champion v Outlook Nashville, Inc.*..............................................22
    380 F3d 893, 902 (6th Cir 2004)

*Feathers v. Aey*.................................................................27
    319 F3d 843, 847 (6th Cir 2003)

*Grawey v. Drury*.....................................................2, 7, 8, 9, 23, 24
    567 F3d 302, 314 (6th Cir 2009)

*Hagans v Franklin Cnty. Sheriff's Office*......................................8, 24
    695 F3d 505, 509-10 (6th Cir 2012)

14

*Higgason v Stephens* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
    288 F3d 868, 876 (6th Cir 2002)

*Jones v. City of Cincinnati* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
    521 F3d 555, 559 (6th Cir 2008)

*Kijowski v City of Niles* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 24, 26
    372 F. App'x 595, 600 (6th Cir 2010)

*Kostrzewa v. City of Troy* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23
    247 F3d 633, 639 (6th Cir 2001)

*Landis v Baker* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 24, 26
    297 F. App'x 453, 463 (6th Cir 2008)

*Lyons v City of Xenia* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 8, 9, 24
    417 F3d 565, 575 (6th Cir 2003)

*Phelps v Coy* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
    286 F3d 295, 301 (6th Cir 2002)

*Roberts v Manigold* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 26
    240 Fed Appx 675 (6th Cir 2007)

*Shreve v Jessamine Cty. Fiscal* Court . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
    453 F3d 681, 687 (6th Cir 2006)

*Solomon v Auburn Hills Police Dep't* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
    389 F3d 167, 172 (6th Cir 2004)

*St John v Hickey* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
    411 F3d 762, 771 (6th Cir 2005)

## I.  NATURE OF ACTION

Plaintiff, Jerry L. Bibbs, asserts a 42 U.S.C. §1983 Excessive Force claim, in violation of U.S.C.A. 4, against the defendant - a City of Centerline police officer, for injuries incurred and damages sustained as a direct result of being tased multiple times, without justification, during a traffic stop on June 24, 2011. Certain of the 50,000 volt taser discharges were beyond gratuitous, they were nothing less than brutal and sadistic - administered by Allen as he kneeled down on Bibbs who was completely subdued, splayed out on the pavement, offering no resistance.

Discovery has concluded. Allen is asking the Court to dismiss the Fourth Amendment excessive force claim asserted against him. Mr. Bibbs opposes the relief sought, relying upon the following facts, law, and exhibits.

## II: (COUNTER) STATEMENT OF FACTS

### These Facts are NOT in Controversy:

**1.**  On June 24, 2011, at about 1:30 a.m., Bibbs - a black man from Mt Clemens, was driving a 1996 Buick, 4dr, with his longtime girlfriend, Angela Rowe - a white woman from Warren, in the front passenger seat.

**2.**  While driving through the City of Centerline, headed back to Angela's house, Officer David Allen - a Centerline public safety officer in a marked police car, saw the Buick and noted it had a crack in the windshield and did not see a license plate.[1]

**3.**  Bibbs saw the police car behind him. On seeing lights flickering in the back of the police car he pulled off the street into a residential driveway.

**4.** As he pulled in behind Bibbs car Allen asserts the driver *'dipped his right shoulder as if he was trying to put something between the seats'*. That in his haste to get to the driver he only activated the flashers on the back off his car [**Ex2** p25 ln2 to p26 ln22].

---

[1] Bibbs does not contest the basis for his contact by Allen for purposes of this lawsuit. Though it is questionable Allen could see a crack in the windshield of Bibbs car while driving behind it in the dead of night. The stop was even more questionable when Allen admitted the car had a license plate affixed to the rear window and was properly registered. [Allen transcript **Ex2** p20 ln5 to p21 ln21].

16

**5.**   Though there is some disagreement on who did what next [2], the parties agree that Bibbs was cooperative and voluntarily got out of his car - whether it was because Allen asked him to step out [**Ex2** p29 ln6 to p31 ln13], or Bibbs did so without being asked [**Ex3** p58 ln24 to p59 ln3]. Angela Rowe stayed in the front passenger seat.

**6.**   When Bibbs got out, he stood at the rear of the driver's door of his car with his right side next to the car, facing Allen [**Ex3** p70 ln2-ln24]. Bibbs position was confirmed by Allen [**Ex2** p34 ln24 to p35ln12] who was standing about 10' away, near the left front of Bibbs car [**Ex3** p56 ln20 to p57 ln22].

**7.**   Bibbs had both hands in the front pockets of his shorts when he got out of his car. On seeing that, Allen told Bibbs to take his hands out of his pockets.  Bibbs admitted that he did not immediately comply with Allen's initial directive to remove his hands from his pockets, as he was still 'fiddling' with things in his pockets, '*checking to make sure I got everything*'[**Ex3** p60 ln2-13].

**The Facts That Follow ARE In Controversy:** {It should come as no surprise that the dash camera and audio recorder in Allen's police car was inoperable [**Ex2** p23 ln10 to p24 ln8]}.

**8.**   Bibbs then removed both hands from his pockets at the same time Allen was telling him, for the second time, to do so [**Ex3** p63 ln1-10], contrary to Allen's assertion that Bibbs only removed his left hand [**Ex2** p32 ln25 to p33 ln7].

**9.**    Bibbs raised both arms up and out [**Ex3** p63 ln9-14]. Bibbs attention was then drawn to a car coming down the street [**Ex3** p69 ln19-25], so he turned his head to the right. As he did so, he put the remnants of a marijuana blunt, that was wrapped in a tissue, into his mouth and swallowed it [**Ex3** p63 ln9 to p65 ln11].

---

[2] Bibbs reports Allen ran up to his car asking questions in rapid fire fashion, like he was '*out of control*' not giving Bibbs time to answer. That Bibbs already had his State I.D. card out and gave it to Allen. Allen then continued on forward of Bibbs car to talk to a lady that had stepped from the house whose driveway they were in and was questioning her. [**Ex3** p51 ln14 to p59 ln3]. On the other hand, Allen reports he '*walked briskly*' to the driver's side of the car, telling the driver (Bibbs) why he was stopped and asked for his license, registration and proof of insurance. On seeing the State I.D. card, in response to his query to Bibbs if he was suspended, Bibbs shook his head up and down and said yes. [**Ex2**, p28 ln2 to p31 ln13].

17

**10**. As soon as he did that, without any forewarning whatsoever, Allen fired his taser [**Ex3** p65 ln12 to p68 ln24]. Angela Rowe, still seated in the front passenger seat, confirms she did not hear the officer give any warning to Bibbs that he was going to be tased [Rowe transcript **Ex6** p42 ln18-20].

**11**. Upon impact by the taser probes, Bibbs lost all muscle control and fell backwards onto the ground [**Ex3** p66 ln6 to p68 ln21]. The barbed prongs impaled Bibbs '*about an inch or two from my privates'* [**Ex3** p71 ln 141-18]. Rowe felt the car shake as Bibbs fell against the car [**Ex6** p41 ln17 to p42 ln1].

**12**.  Allen confirmed Bibbs fell to the ground upon being struck by the taser probes [**Ex2** p42 ln23 to p43 ln10; p45 ln10-12]. Which would confirm both taser probes impaled Bibbs making a complete circuit, contradicting Allen's and Dempsey's claim that only one taser probe hit its mark with no resulting effect.[Def's Brief at pg 4] .[3]

**13**.  Contrary to Allen's assertion that Bibbs turned to his right and 'started to walk away in a hurried manner' toward the rear of Bibbs car [**Ex2** p34 ln10-23], when Bibbs was tased and fell to the ground he was still on the driver's side of his car near the pillar between the front and rear door. He had not moved from his original location when he first got out of the car [**Ex3** p70 ln1-17]. Rowe confirmed the location [**Ex6** p38 ln20-24; p45 ln12-17].[4]

**14**.  After falling to the ground, Bibbs, moaning in pain, was able to muster enough energy to roll onto his stomach as he felt like he was being choked by his saliva [**Ex3** p66 ln15-20]. Rowe could hear Bibbs moaning [**Ex6** p43 ln1-17].

---

[3] NOTE: The Court should be aware that defendant makes reference in his Brief (at pg 5) to a Manual for the X26C Taser - the civilian model of the Taser. That is not the model used by law enforcement!

[4] See diagram by Rowe depicting Bibbs location after he was tased and had fallen to the Ground [see **Ex7**]. The stick figure is the officer; the 'X' by the passenger door is Bibbs [**Ex6** p43 ln18 to p45 ln17].

**15.** It was only after rolling onto his stomach that Bibbs heard, for the first time, Allen yelling at him to "*Spit it out, Spit it out!*" [**Ex3** p66 ln11-14]. Bibbs was unable to spit anything out at that point as he swallowed the remains of the marijuana blunt just as he was tased [**Ex3** p64 ln23 to p65 ln11].

**16.** Then came five more taser blasts in quick succession. The Court's attention is directed to the (Allen's)Taser download data report [**Ex1**]. The data confirms Allen fired the Taser 6 separate times, for a total tasering time into Bibbs body of 38 seconds within an 87 second time span . . .[5]

| Sequence # | | (Start Time) | Local (End) Time | Duration of Firing | (Time Between Firings) |
|---|---|---|---|---|---|
| 0042 | (1) | (01:40:43) | 01:40:51 | 9 seconds | (5 seconds) |
| 0043 | (2) | (01:40:57) | 01:41:02 | 6 seconds | (4 seconds) |
| 0044 | (3) | (01:41:07) | 01:41:11 | 5 seconds | (6 seconds) |
| 0045 | (4) | (01:41:18) | 01:41:23 | 6 seconds | (9 seconds) |
| 0046 | (5) | (01:41:33) | 01:41:40 | 8 seconds | (25 seconds) |
| 0047 | (6) | (01:42:06) | 01:42:09 | 4 seconds | |

Total Firing Time:**38** seconds   Total Time Between Firings:**49** seconds   Time Elapsed:**87** seconds

**17**. What reviewing the uncontroverted data from the Taser, what Allen reports occurred immediately after the first tasing makes absolutely no sense:

**a.** That right after he tased Bibbs the first time, while Bibbs was still on the ground (choking on his saliva - see ¶14 above) he took the time to get on his portable radio to notify his dispatch that he had just tased someone, gave his location, and asked to have Dempsey dispatched to his location [**Ex2** p45 ln10-16; **Ex4** p5].

**b.** After making that call to dispatch, Allen asserts Bibbs "*just stood up*" and "*attempts to walk away*", and "*continued to stuff the object in his mouth*". Allen

---

[5] The 'Local Time' reports the end of the taser cycling, not its start time [**See Ex8** - pg8- Excerpt from Taser Dataport User Manual for X26 Taser used by Allen]. Also, undersigned has added the Columns and numbers in parenthesis to the download data [**Ex1**] to clarify for the reader the number of tasings and to underscore their rapid succession.

reports he then tased Bibbs for the second time and Bibbs went back down to the ground [**Ex2** p45 ln20 to p47 ln3; **Ex4** p5].[6]

    **c.**  That while prone on the ground Bibbs tried to crawl away [**Ex2** p46 ln25 to p47 ln17; **Ex4** p5-6]. As he was trying to crawl away Allen reports he "*conducted a drive-stun to his right buttocks area*"[**Ex2** p48 ln10-14; **Ex4** p6] which completed the circuit [**Ex2** p48 ln2 to p49 ln9].

    **d.**  That because Bibbs was still trying to put his fingers into his mouth Allen "*conducted a drive-stun to his right shoulder*" [**Ex2** p49 ln22 to p50 ln2; **Ex4** p6].

**18**.  As Bibbs is splayed out on the ground, with his arms extended outward, Allen handcuffed Bibbs behind his back, called for an ambulance, then Dempsey showed up [**Ex2** p50 ln8 to p51 ln24; p53 ln19 to p54 ln5; **Ex3** p71 ln2-10].

**19.**  Dempsey grabbed onto the handcuffed Bibbs and dragged him a few feet to Allen's police car and leaned Bibbs up against the front bumper [**Ex3** p75 ln16-25].

**20.**  Dempsey then jerked the prongs out of Bibb's pelvic area.  When Bibbs said something about medical personnel removing the barbed prongs, Dempsey told Bibbs to 'shut up' [**Ex3** p76 ln23 to p77 ln10].

**21.**  Dempsey reported the only information Allen provided about tasing Bibbs was that he 'deployed his taser'[**Ex5** p11 ln23 to p12 ln5]. As for the number of times he tased Bibbs, Dempsey said Allen did not say any specific number, "*He just said that I deployed my Taser*" [**Ex5** p12 ln17-22; p13 ln25 to p14 ln9].

**22.**  When the paramedics from Universal-Macomb Ambulance service arrived they placed Bibbs on a gurney and into the ambulance. He checked out okay except for tachycardia (elevated heart rate) [**Ex9**].

**23**.  Though Allen stated in his deposition he told the paramedics he had tased Bibbs [**Ex2** p54 ln14-19; p62 ln8-11], there was no mention of Bibbs being tased in the

---

[6] In his Brief at pg 4, contrary to his deposition testimony and his police report, defendant states it was after the 2nd tasing that he contacted dispatch.

Paramedics report [**Ex9**].  Furthermore, the paramedic that wrote the report affirmed that had the officer provided that information it certainly would have been documented in her report [**Ex10** p19 ln4 to p20 ln2].

**24**.  When Allen was asked why he chose to omit from his police report [**Ex4**] information relating to the 5th and 6th times he tased Bibbs, particularly after he confirmed at the beginning of his deposition that his report was true, accurate, and complete, and did not want to add or delete any information [**Ex2** p11 ln25 to p12 ln4; p12 ln21 to p13 ln15], and in his description of events up to that point in his deposition, Allen reported [**Ex2** p61 ln22 to p62 ln7]:

> **Q.** (By Mr. Gibson): Okay, thanks. Now, your report indicates that you have deployed the Taser four times; would you agree with me?
>
> **A.** (By Allen): Yes.
>
> **Q.** Okay. Can you indicate to me why you would choose to omit the other Taser deployments as reflected in the Taser report?
>
> **A.** Perhaps, sir, maybe in the heat of battle when Mr. Bibbs was walking away, I inadvertently went ahead and pulled the trigger.  My report is accurate to what I - -
>
> **Q.** What you recall?
>
> **A.** Correct.

**25**.  Defendant's Brief also completely ignores, and fails to address in any fashion, the 5th and 6th Taserings of Bibbs, despite the uncontroverted evidence [**Ex1**].

### III. <u>STANDARD OF REVIEW</u>

Plaintiff adopts in full the Standard of Review as set forth in Defendant's Brief, Section III, pgs 8-9, as if fully set forth herein.  Plaintiff only adds the following:

After the parties have presented their evidence, "the judge's function is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." [7] In evaluating the evidence, the court must

---

[7] *Anderson v Liberty Lobby*, 477 US 242, 249 (1986).

draw all inferences in the light most favorable to the non-moving party. [8]

## IV.  LAW and ANALYSIS

**A.   Summary Judgment Is Not Warranted on Plaintiff's Claim Against Defendant Asserting Excessive Force in Violation of U.S.C.A. 4.**

**Bibbs had been stopped for a minor traffic violation, was not combative, was not attempting to flee, posed no threat to anyone, yet was tased repeatedly by Allen even after Bibbs was face down, subdued, splayed out on the ground. Therefore, Allen's conduct was objectively unreasonable and violated law that was clearly established well before June 2011.**

Mr. Bibbs brings this action pursuant to 42 U.S.C. § 1983, alleging Officer Allen violated his Fourth Amendment right to be free from the use of Excessive Force by a police officer.  A claim of excessive force in the context of "an arrest, or other 'seizure'" is analyzed under the Fourth Amendment's unreasonable seizure jurisprudence when analyzing such claims.[9] In inquiring whether a constitutional right is clearly established, we look first to decisions of the Supreme Court, then to decisions of this court and other courts within our circuit, and finally to decisions of other circuits. [10] A right is "clearly established" if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right."[11]  Thus, the relevant inquiry is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."[12]  It is well established in this Circuit that individuals have a constitutional right to be free

---

[8] *Matsushita Elec. Indus. Co. v Zenith Radio Corp.*, 475 US 574, 587 (1986).

[9] *Kostrzewa v. City of Troy*, 247 F.3d 633, 639 (6th Cir 2001).

[10] *Champion v Outlook Nashville, Inc.*, 380 F3d 893, 902 (6th Cir 2004)(quoting *Higgason v Stephens*, 288 F3d 868, 876 (6th Cir 2002)), *cert. denied sub nom. Dickhaus v Champion*, 544 US 975 (2005).

[11] *Anderson v. Creighton*, 483 US 635, 640 (1987).

[12] *Saucier v. Katz* 533 US 194, 202 (2001).

from excessive force during or after arrest. [13]

Whether an officer has exerted excessive force during the course of seizure is determined under an "objective reasonableness" standard. *Id*.[14] This entails "balanc[ing] the consequences to the individual against the government's interests in effecting the seizure." [15] The assessment further involves a fact-specific inquiry based on the totality of the circumstances that "pay[s] particular attention to three factors: (a) the severity of the crime at issue, (b) whether the suspect poses an immediate threat to the safety of the officers or others, and (c) whether he is actively resisting arrest or attempting to evade arrest by flight.'"[16] Though these factors are not an exhaustive list, the ultimate inquiry is "whether the totality of the circumstances justifies a particular sort of seizure."[17] Again, the Sixth Circuit has repeatedly held the use of force upon a compliant suspect or after a suspect has been incapacitated or neutralized is excessive as a matter of law. [18]

The use of force, including a Taser, on a suspect who has been subdued is unreasonable and a violation of a clearly established right.[19] Furthermore, this Circuit has held that a single tasing violates a plaintiff's clearly established rights if he is

---

[13] *See, e.g., Graham v Connor*, 490 US 386, 388 (1989); *Solomon v Auburn Hills Police Dep't*, 389 F3d 167, 173 (6th Cir 2004).

[14] *Graham v. Connor*, supra, 490 US at 396-97.

[15] *Burchett v. Kiefer*, 310 F3d 937, 944 (6th Cir 2002) (citing *Graham*, 490 US at 396).

[16] Kostrzewa, 247 F3d at 639 (quoting Graham, 490 U.S. at 396).

[17] *St John v Hickey*, 411 F3d 762, 771 (6th Cir 2005)(quoting *Graham*, 490 US at 396).

[18] *Baker v City of Hamilton*, 471 F3d 601, 607-08 (6th Cir 2006). See also *Shreve v Jessamine Cty. Fiscal Court,* 453 F3d 681, 687 (6th Cir 2006);   *Phelps v Coy*, 286 F3d 295, 301 (6th Cir 2002).

[19] *Grawey v Drury***,** 567 F3d 302, 314 (6th Cir 2009).

neutralized and is not resisting an officer's efforts to restrain him.**[20]**  Absent some compelling justification - such as the potential escape of a dangerous criminal or the threat of immediate harm - the use of a taser on a non-resistant person is unreasonable.**[21]**

Here, after being stopped for a vehicle equipment violation, posing no threat to Allen or others, not resisting or attempting to evade arrest, Allen tased Bibbs six times totaling 38 seconds within an 87 second time span [**Ex1;** see ¶16 above]; Five of the taserings after Bibbs fell to the ground his body face down on the cement, limbs splayed out, subdued, not resisting. Therefore, Allen's repeated use of the taser amounted to force that was excessive under law clearly established well before the June 2011 incident that is the subject of Plaintiff's complaint. [22]

"Even without precise knowledge that the use of the [T]aser would be a violation of a constitutional right," on these facts, Allen "should have known based on analogous cases that [his] actions were unreasonable.**[23]**

Defendant cites **ExD** (*Williams v Ingham*)**, ExI** (*Williams v Sandel*)**, ExJ** (*Caie v West Bloomfield Twp*) and **ExK** (*Alexander v City of Shelby Twp*) attached to defendant's brief, for the proposition that use of taser to obtain compliance was reasonable. However, each of those cases is distinguishable from the case at bar.

*Williams v Ingham*: In that 2005 incident, *Williams,* driving a stolen car, led officers on two high-speed chases. When finally stopped Williams refused to get out of the car, moved toward center of car, broke one officer's finger while avoiding

---

[20] *Hagans v Franklin Cnty. Sheriff's Office*, 695 F3d 505, 509-10 (6th Cir2012); *Austin v Redford Twp. Police Dep't*, 690 F3d 490, 497-98 (6th Cir 2012).

[21] *Kijowski v City of Niles*, 372 F.App'x 595, 600 (6th Cir 2010)(discussing use of Taser).

[22] *Austin v Redford Twp Police Dep't*, 690 F3d 490, 496 (6th Cir 2012). *Grawey v Drury*, 567 F3d 302, 314 (6th Cir 2009). See also *Lyons v City of Xenia*, 417 F3d 565, 575 (6th Cir 2003)(quoting *Graham v Connor*, 490 US 386, 396 (1989)).

[23] *Landis v Baker*, 297 F. App'x 453, 463 (6th Cir 2008).

removal and continued to hold his hands under his body to avoid handcuffing once he was removed.

*Williams v Sandel*: In that 2007 incident, part of which was captured on video, Williams, who was highly intoxicated and acting irrational, was running naked on the expressway. Once contacted by the police he did all he could to keep from being handcuffed. He constantly evaded the officers, running in and out of traffic, creating a danger to himself and others. It took several officers to finally subdue Williams. It is undisputed that once the officers secured Williams no additional force was used against him.

*Caie v West Bloomfield Twp*: In this 2009 incident, 19 year old Jason Caie had consumed a large quantity of alcohol and drugs, had attempted suicide several times in the past and was under a psychiatrist's care.  He had consumed 3 ½ bottles of wine, snorted Paxil and called his brother to tell him he was going to kill himself.  Caie then went to a local lake, and took a rowboat to the middle of the lake. Officers responded to the scene. Seeing Caie chest deep in the water, they were able to get him to come out.  Caie refused to be subdued, threatening officers.  The first taser shot missed. Officers finally got Caie to the ground but he then refused to remove his hand from underneath his body.  An officer delivered a drive-stun into Caie's side. He was then handcuffed and taken to the hospital.

*Alexander v City of Shelby Twp*: In that 2006 case, part of which is captured on video, Alexander was driving drunk and on a flat tire.  He refused to take a breath test at the station.  So Officers had to take him to a local hospital for a blood test. Alexander decided he was not going to get into the police car for the drive to the hospital and did all he could to prevent the officers from 'helping' him.  Finally, one of the officers delivered a drive-stun to Alexander's abdomen just above the belt. Alexander then entered the car without further ado.

25

On the other hand, defendant directs the court's attention to three other cases wherein this Court determined excessive force was used [*Kijowski v City of Niles* (**ExL** attached to Def's Brief); *Landis v Baker* (**Ex M** attached to Def's Brief); and *Roberts v Manigold* (**ExN** attached to Def's Brief). Bibbs too has cited these cases and relies upon these same cases in support of his claim that excessive force was used.

**Dempsey's Affidavit** - [**ExC** attached to Defendant's Brief] as reported above, is as self-serving and deficient as Allen's reporting of the incident [**Ex4**], and should be held for naught. Paying particular attention to Dempsey's Affidavit at ¶'s 10 thru 14, Bibbs responds by reaffirming what he has stated before: That Dempsey arrived on scene after the tasing was done and after Bibbs was handcuffed [**Ex2** p51 ln5-11; p54 ln 3-10] and only knew what Allen told him - simply that he had deployed his taser [**Ex5** p11 ln7-15, ln 23 to p12 ln22; p13 ln25 to p14 ln9]. Because he was not present during the repeated tasings, Dempsey is not able to testify whether or not both probes struck Bibbs, or whether one of the probes may have became dislodged when Bibbs rolled over onto his stomach after being tased the first time [**Ex3** p66 ln16-20]. And certainly is not able to certify the effect each Taser firing had on Bibbs. Especially considering Dempsey did not know Bibbs had been tased more than once [**Ex5** p11 ln23 to p12 ln22; p13 ln25 to p14 ln9] and therefore would not and could not have known of Allen assertion that only 1 of 2 prongs initially impacted plaintiff. And of course, Dempsey did not write a report [**Ex5** p7 ln15-25]. And it was evident during his deposition that he had absolutely no recall of the incident other than what he read from Allen's report.

On the basis set forth above, Bibbs has set forth a genuine issue of material fact regarding his claim of Excessive Force by Officer Allen, in violation U.S.C.A. 4. , and that the law regarding this claim was clearly established well before the date of this June 2011 incident.

**B.      Summary Judgment Is Not Warranted on Plaintiff's U.S.C.A. 4  Excessive Force Claim Against Defendant on the Basis of Qualified Immunity.**

**Because Officer Allen violated Mr. Bibb's constitutional right regarding the use of excessive force, and the law regarding this claim was clearly established on the date of the violation, Allen is not entitled to the protective cloak of qualified immunity for his actions.**

**Qualified Immunity** shields government officials performing discretionary functions from "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." [24]   Qualified immunity does not serve merely as a defense against liability to be asserted during litigation.[25] Rather, it offers "an entitlement not to stand trial or face the other burdens of litigation." [26]

A defendant enjoys qualified immunity on summary judgment unless the facts alleged and the evidence produced, when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that: (1) the defendant violated a constitutional right; and (2) the right was clearly established.[27] When the legal question of immunity is completely dependent upon which view of the facts is accepted by the jury, the jury becomes the final arbiter of a claim of immunity.[28]

Without repeating what has already been discussed, Mr. Bibbs relies upon facts and law already set forth above in support of his position that Allen engaged in

---

[24] *Feathers v. Aey*, 319 F3d 843, 847 (6th Cir. 2003) (quoting *Harlow v Fitzgerald*, 457 US 800, 818 (1982)).

[25] *Saucier v. Katz*, 533 US 194, 200-201 (2001).

[26] *Mitchell v. Forsyth*, 472 US 511, 526 (1985).

[27] *Jones v City of Cincinnati*, 521 F3d 555, 559 (6th Cir 2008) (citing *Saucier*, 533 US at 201).

[28] *Bouggess v Mattingly*, 482 F3d 886, 896 (6th Cir 2007).

27

Excessive Force in violation of the Fourth Amendment, and the law was clearly established regarding the use of force at the time. As such, Allen is not entitled to the benefit of qualified immunity as to the claim asserted against him.

## V.  CONCLUSION

As Jerry Bibbs has presented a genuine issue of material fact as to each of the material elements of his Excessive Force claim in violation of U.S.C.A. 4, the Court is precluded from granting the relief requested by the Defendant. Therefore, Mr. Bibbs respectfully requests an Order issue denying the relief requested by the Defendant, and allow this matter to be presented to the trier of fact for adjudication.


Respectfully,

s/ Fred L. Gibson
Fred L. Gibson
Attorney for Plaintiff
17001 19 Mile Road, Ste 1C
Clinton Twp MI 48038-4867
586.416.2520 / 586.464.1629 [fx]
attorneyfgibson@gmail.com
P39530

## CERTIFICATE OF SERVICE

I hereby certify that on February 17, 2014, I electronically filed the foregoing paper, along with the Exhibits identified in and attached to the pleadings, with the Clerk of the Court using the ECF system, which will send notification of such filing to the attorneys of record in this matter, at their electronic mail address(es) as identified in the caption.


S/  Fred L. Gibson
Fred L. Gibson
The F.L.Gibson Group, P.C.
17001 19 Mile Road, Ste 1C
Clinton Twp MI 48038-4867
586.416.2520
attorneyfgibson@gmail.com
P39530