UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JERRY L. BIBBS,

    Plaintiff,                              Case No. 13-cv-10362
                                          Hon. Matthew F. Leitman

v.

DAVID ALLEN,

    Defendant.
_____/

**OPINION AND ORDER DENYING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT (ECF #12)**

**INTRODUCTION**

In this action, Plaintiff Jerry L. Bibbs ("Bibbs") alleges that Defendant David Allen ("Allen"), a Centerline police officer, violated his (Bibbs') Fourth Amendment rights by using excessive force when he arrested Bibbs. (*See* Compl., ECF #1.) Bibbs complains that during a 2011 traffic stop, Allen repeatedly and without justification stunned Bibbs with a taser. Allen acknowledges that he used his taser on Bibbs, but says he did so only after Bibbs actively resisted arrest and refused to follow Allen's orders.

Allen asserts that he is entitled to qualified immunity, and he has moved for summary judgment on that defense. (*See* Allen Motion and Brief, ECF #12.)

1

Viewing the facts in the light most favorable to Bibbs (as the Court must), for all of the reasons stated in this Opinion and Order, the Court **DENIES** Allen's Motion.

## FACTUAL BACKGROUND

### A.   The Agreed-Upon Facts

The parties hotly dispute many of the facts underlying Bibbs' excessive-force claim. They appear to agree upon (or at least agree not to dispute for purposes of this motion) the following facts:

On June 24, 2011, at about 1:30 a.m., Bibbs was driving in the City of Centerline. (*See* Allen Deposition at 20, Pg. ID 232.) Allen was on patrol at that time. According to Allen, he noticed that Bibbs' car had a "cracked windshield and … no visible license plate." (*Id.*) Allen "proceeded to follow [Bibbs'] vehicle and [Allen] initiate[d] a traffic stop." (*Id.* at 21, Pg. ID 232.) After Allen initially questioned Bibbs, Bibbs exited his vehicle with his hands in his pockets. (*See id.* at 31-32, Pg. ID 235; *see also* Bibbs Dep. at 58-59, Pg. ID 248.) Allen told Bibbs to remove his hands, and Bibbs did not immediately comply with Allen's order. (*See id*; Bibbs Dep. at 59-60, Pg. ID 248.) Instead of removing both hands right away, Bibbs "fiddl[ed]" with his hands in his pockets in an effort to "make sure [he removed] everything" from the pockets. (Bibbs Dep. at 60, Pg. ID 248.)

At this point in the encounter, the parties' versions of events diverge.[1]

## B.     Bibbs' Version of Events

Bibbs recounts the disputed events at pages 63-77 of his deposition. (*See* Bibbs Dep. at Pg. ID 249-252.) Bibbs says that while he was "fiddling," Allen repeated his command to remove both hands from his pockets, and Bibbs' girlfriend (who was with him in his car) also screamed at him to remove his hands from his pockets. (*Id.* at 59-60, Pg. ID 248.) According to Bibbs, at that point he did remove both hands, just as Allen commanded him to do. (*See id.* at 63, Pg. ID 249.) Bibbs says that he then turned to his right, put a "real small" white tissue containing marijuana into his mouth, and swallowed. (*Id.* at 63-65, Pg. ID 249-250.) Apart from this small turn, Bibbs insists he never moved or walked away from Allen at any time. (*See id.* at 67, Pg. ID 250.)

Bibbs says that immediately after he put the white tissue in his mouth, Allen "shot [Bibbs] below the belt …. an inch of two from [Bibbs'] privates" with a taser. (*Id.* at 65-66, Pg. ID 250.) Bibbs insists that Allen employed the taser *before* directing Bibbs to remove the white tissue from his mouth. (*See id.*) Indeed, Bibbs says that Allen deployed the taser without any warning or advance notice that he was going to do so. (*See id.*) Bibbs says that apart from his initial

---

[1] Allen's police car is equipped with an in-car video system. However, the video system was not working on the morning in question – indeed, according to Allen, all of Centerline's police cars at that time had broken camera systems – and thus no video exists of the Bibbs' traffic stop. (*See* Allen Dep. at 23-34, Pg. ID 233.)

3

and short-lived non-compliance with Allen's order to remove his hands from his pockets, he complied fully with all of Allen's orders. (*See id.* at 76, Pg. ID 252.)

The "very powerful" force from the taser "knocked [Bibbs] off [his] feet" and "[e]verything just tensed up." (*Id.* at 66, Pg. ID 250.) Bibbs says that as he was "on the ground, [] in pain," he "roll[ed] over on [his] stomach" because his "saliva was [] choking [him]." (*Id.*) Bibbs claims that he was otherwise unable to move due to the effects of the taser. (*See id.*) Bibbs then says he remained on the ground, unable to resist or move, while Allen repeatedly tased him and ordered him to spit out the white tissue. (*See id.* at 75, Pg. ID 252.) In Bibbs' words: "All I know is he just – every time he kept saying, you know 'spit it out,' … it was just shocks." (*Id.*)

Bibbs believed Allen tased him "about four [separate] times." (*Id.*) According to data retrieved from Allen's taser, it fired on six separate occasions within an 87-second span during the relevant time frame. (*See* the "Taser Log," ECF #13-2 at 3-4, Pg. ID 225-226.) The total "duration" of these firings was 38 seconds. (*See id.*)

When another officer arrived on the scene, the tasing stopped. Bibbs says at that point he felt "paralyzed," "drained," and was in "total submission." (*Id.* at 76, Pg. ID 252.)

4

**C.     Allen's Version of Events**

Allen's starkly-contrasting version of events can be found at pages 32-52 of his deposition. (*See* Allen Dep. at Pg. ID 235-240).  According to Allen, when he ordered Bibbs for a second time to take his hands out of his pockets, Bibbs removed only his left hand and began to "walk away." (*Id.* at 33, Pg. ID 235.) Allen says that at that point he "pulled [his] taser and again ordered Bibbs to remove his right hand.  Mr. Bibbs [though] … continue[d] to go ahead and walk away … in a hurried manner." (*Id.* at 37, Pg. ID 236.)

Allen says that he then saw Bibbs "put a white object or substance in his mouth." (*Id.* at 41, Pg. ID 237.)  Allen believed the substance to be cocaine. (*See id.*)  Allen then "ordered Mr. Bibbs not to put [the substance] in his mouth and to spit it out."  (*Id.* at 42, Pg. ID 238.)  According to Allen, Bibbs refused and "continued to shove the white object in his mouth as he walked away." (*Id.*)  Allen then "advised Mr. Bibbs if he didn't go ahead and do it [i.e. follow Allen's orders to spit out the white substance and stop walking away], [Allen] was going to tase him." (*Id.*)  Allen says that despite that clear warning, Bibbs "continu[ed] to walk away."  (*Id.* at 43, Pg. ID 238.)  Only then did Allen "deploy[] [his] taser" by shooting two taser darts at Bibbs.[2] (*Id.*)

---

[2] Tasers can be placed in one of two modes: 'dart' mode and 'drive stun' mode. In 'dart mode' "the gun propels a pair of barbed darts that penetrate [a] person's skin and override[s] [their] central nervous system, causing 'excruciating pain that

5

Allen says that his initial use of his taser was not fully effective because when he "pulled the trigger" on his taser, only "one dart" impacted Bibbs. (*Id.*) In dart mode, the taser is not effective unless both darts lodge in a suspect, thus creating a complete electrical circuit. (*See id.* at 46, Pg. ID 239.) Allen says that even though the single dart did not deliver an electric shock to Bibbs, it nonetheless knocked Bibbs to the ground. (*See id.* at 45-46, Pg. ID 238-239.) While on the ground, Bibbs "continued to stuff the [white] object in his mouth." (*Id.* at 45, Pg. ID 238.) Allen says that Bibbs then stood up and again "attempt[ed] to walk away," and he (Allen) "again order[ed] Mr. Bibbs to take [the substance] out of his mouth…." (*Id.* 45-46, Pg. ID 238-239.) Bibbs supposedly refused to obey that command, and Allen therefore pulled the trigger on his taser a second time. (*See id.* at 47, Pg. ID 239.) Allen says that, as with his first use of the taser, only a single dart was lodged in Bibbs during this second tasing. (*See id.*)

According to Allen, the second firing of his taser knocked Bibbs back onto the ground again. (*See id.*) While on the ground a second time, Bibbs "tried to crawl away." (*Id.*) Allen says he again "ordered Mr. Bibbs to take [the substance] out of his mouth [and] [a]s [Bibbs again] went to … shove the white object and his

---

radiates throughout the body,' paralyzing the person and rending them 'limp and helpless.'" *Lucier v. City of Ecorse*, 12-cv-12110, 2014 WL 1260651 at \*9, n. 3 (E.D. Mich. Mar. 27, 2014) (quoting and citing *Cockrell v. City of Cincinatti*, 468 Fed. App'x 491, 492, n.3 2012)).

fingers in his mouth, [Allen] conducted a drive stun to his right buttocks area."[3] (*Id.* at 48, Pg. ID 239.) Allen confirmed that at this time Bibbs was "prone on the ground face down … [i]n a T fashion." (*Id.* at 50, Pg. ID 240.) Allen says that Bibbs nonetheless continued "to go ahead and push the object [or] the substance in his mouth[,]" and Allen "conducted a drive stun [with the taser to Bibbs'] right shoulder area in an attempt to have Mr. Bibbs go ahead and remove the object from his mouth." (*Id.* at 49-50, Pg. ID 239-240.) Allen then "put his taser away[,] handcuffed Mr. Bibbs," and a second officer arrived on the scene. (*Id.* at 51, Pg. ID 240.)

## GOVERNING LEGAL STANDARD

A movant is entitled to summary judgment when it "shows that there is no genuine dispute as to any material fact...." *U.S. SEC v. Sierra Brokerage Services, Inc.,* 712 F.3d 321, 326–27 (6th Cir. 2013) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52 (1986)) (quotations omitted). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for [that party]." *Anderson,* 477 U.S. at 252. However, summary judgment is not

---

[3] Allen explained that in 'drive stun' mode, instead of firing darts at a suspect, "you actually place the TASER itself on the person" in order to "complete the circuit." (Allen Dep. at 48-49, Pg. ID 239.) 'Drive-stun' mode "deliver[s] an electric shock, but [does] not override[] the nervous system as in dart mode." *Lucier,* 2014 WL 1260651 at *9, n. 3.

appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Id.* at 251-252.

When reviewing the record, "the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Id.* Indeed, "[c]redibility determinations, the weighing of the evidence, and the drafting of legitimate inferences from the facts are jury functions, not those of a judge…" *Id.* at 255.

The Supreme Court recently stressed that these rules are fully applicable in qualified immunity cases like the one the Court confronts here. *See Tolan v. Cotton*, 134 S.Ct. 1861, 1866 (2014) ("Our qualified immunity cases illustrate the importance of drawing inferences in favor of the nonmovant.") In *Tolan*, the Supreme Court vacated a grant of qualified immunity to a police officer in an excessive force case because, in part, the lower court "credited the evidence of the party seeking summary judgment and failed to properly acknowledge key evidence offered by the party opposing that motion." *Id.* at 1867-1868. "By weighing the evidence and reaching factual inferences contrary to [the nonmoving party's] competent evidence, the court below [in *Tolan*] neglected to adhere to the fundamental principle that at the summary judgment stage, reasonable inferences should be drawn in favor of the nonmoving party." *Id.* at 1867.

8

## ANALYSIS

### A. The Court's Two-Pronged Qualified-Immunity Analysis

"In resolving questions of qualified immunity at summary judgment, courts engage in a two-part inquiry." *Tolan*, 134 S.Ct. at 1865. "[B]oth [parts] must be answered in the affirmative for the case to go to a factfinder…If either one is not satisfied, qualified immunity will shield the officer from civil damages." *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013). "[U]nder either prong [of this inquiry], courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment." *Tolan*, 134 S.Ct. at 1866.

"The first [prong] asks whether the facts taken in the light most favorable to the party asserting injury show the officer's conduct violated a federal right." *Id.* 1865 (internal quotation and quotation marks omitted). Where, as here, "a plaintiff alleges excessive force during an investigation or arrest, the federal right at issue is the Fourth Amendment right against unreasonable seizures." *Id.* "The inquiry into whether this right was violated requires a balancing of the nature and quality of the intrusion of the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Id.* (internal quotation marks omitted).

"The second prong of the qualified-immunity analysis asks whether the right in question was 'clearly established' at the time of the violation." *Id.* at 1867

(internal quotation marks omitted). "Governmental actors are shielded from liability for civil damages if their actions did not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* (internal citations and quotation marks omitted.) "The sources of clearly established law to be considered are limited. [This Court must] look first to decisions of the Supreme Court, then to decisions of [the Court of Appeals for the Sixth Circuit] and other courts within [that] circuit, and finally to decisions of other circuits." *Martin*, 712 F.3d at 961 (internal quotation marks omitted).

Here, viewing the evidence in the light most favorable to Bibbs, a jury could find that Allen used excessive force against Bibbs, and the Court concludes that Bibbs' right to be free from that force was clearly established. Allen is therefore not entitled to summary judgment on his qualified immunity defense.

**B. A Jury Could Find That Allen's Use of His Taser on Bibbs Was Objectionably Unreasonable and Therefore Violated Bibbs' Constitutional Rights (Prong One)**

The determination as to whether a police officer has exerted excessive force during the course of a seizure – and thus violated a suspect's Fourth Amendment rights for purposes of prong one of the qualified-immunity inquiry – is reviewed "under the Fourth Amendment's objective reasonableness standard." *Graham v. Connor*, 490 U.S. 386, 388 (1989). "[T]he question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them,

10

without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397 (internal quotation marks omitted). The Court must analyze this conduct "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396. Three factors guide the Court's determination of whether a particular use of force is reasonable: "[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Id.*

Applying the *Graham* factors here, a jury could find that Allen's use of a taser on Bibbs was not "objectively reasonable." As an initial matter, the "severity of the crime at issue" was relatively minor. Allen initiated a traffic stop because of two insignificant traffic violations: a cracked windshield and license plate that was not visible. (*See* Allen Dep. at 20, Pg. ID 232.) And Bibbs did not take any action during the traffic stop that materially increased the severity of his suspected criminal activity. According to Bibbs, his only criminal conduct during the stop was his possession of, and attempt to swallow, the *de minimis* amount of marijuana he had wrapped in a white tissue – a quantity small enough to fit into his mouth. That did not convert Bibbs into a serious criminal offender who needed to be immediately subdued, without prior warning, by a debilitating taser strike. *See, e.g., Turner v. Hill*, 2014 WL 549462 at *5 (W.D. Ky. Feb. 11, 2014) (finding that

11

"misdemeanor charges of marijuana possession and receiving stolen property were not "particularly serious or severe" crimes.)

And even if Bibbs had a very small amount of cocaine, as Allen perceived, that would not change the Court's analysis. The simple possession of a very small amount of illegal drugs is not sufficiently severe to justify repeated, debilitating stuns with a taser under the circumstances that exist here. Indeed, even if Bibbs' possession of drugs (and his attempt to destroy evidence by swallowing the drugs) was deemed to be somewhat severe, for all the reasons stated herein, Allen's repeated use of his taser on the defenseless, non-resisting Bibbs could be found to be objectively unreasonable under *Graham. See, e.g. Cole v. City of Dearborn*, 448 Fed. App'x 571, 576 (6th Cir. 2011) (finding that the *Graham* factors "point to a Fourth Amendment violation" even though plaintiffs "were believed to have committed an armed robbery, a severe crime…").

Moreover, it cannot be said, viewing the evidence in Bibbs' favor, that Bibbs "pose[d] an immediate threat to the safety" of Allen or others, "actively resist[ed] arrest," or "attempt[ed] to evade arrest by flight." Indeed, according to Bibbs, at the time Allen tasered him, he was not resisting arrest, was following Allen's orders, and had both hands in the air. (*See* Bibbs Dep. at 63, 68, Pg. ID 249-250.) Nor did Bibbs ever brandish a weapon or threaten anybody in any way. The Sixth Circuit "has found that defendants pose no immediate threat where they are not

resisting and have their hands up in the air." *Correa v. Simone*, 528 Fed App'x 531, 534 (6th Cir. 2013) (citations omitted).

And even if Bibbs arguably posed some sort of threat to Allen while Bibbs remained on his feet, that threat disappeared once the initial taser strike dropped Bibbs to the ground and rendered him helpless, as Bibbs claims it did. Thus, the final five taser shocks cannot be considered an objectively reasonable means of subduing an imminent threat.

Allen counters that his decision to tase Bibbs was reasonable because (1) he believed that Bibbs posed a threat to himself by attempting to swallow suspected cocaine and (2) Bibbs disobeyed repeated pre-tasing commands to "spit it out." When the facts are viewed in the light most favorable to Bibbs, however, Allen is not entitled to summary judgment on this theory. Bibbs testified that Allen initially fired the taser at Bibbs *before* ordering Bibbs to spit the white substance out and *without* any warning. Given this testimony, the Court cannot conclude, as a matter of law, that Allen's first use of the taser was a reasonable effort to secure compliance with an order that Bibbs had disregarded. *See Grawey v. Drury*, 567 F.3d 302, 312 (6th Cir. 2010) (officer's "contentions … must be rejected for qualified immunity analysis because they are premised on [the officer's] version of the facts. […] These material facts are disputed by [the plaintiff] and are therefore for a jury to decide at trial").

13

While Allen apparently did order Bibbs to spit out the white substance before and during his subsequent taser deployments (i.e., all of the trigger pulls after the first pull), those deployments cannot be justified as reasonable efforts to secure compliance with the "spit-it-out" order. Where, as here, an officer seeks to justify his use of force as necessary to secure compliance with a command, the officer must show that before he employed the force, he afforded the suspect a reasonable opportunity to comply with the command.[4] Indeed, the Sixth Circuit and district courts within this Circuit have repeatedly rejected claims that an officer reasonably used force to secure compliance with an order where the officer failed to give the suspect a reasonable chance to comply with the order.[5] Viewed in the light most favorable to Bibbs, the record establishes that (1) Allen tased Bibbs

---

[4] There may, of course, be instances in which an officer may reasonably determine that circumstances are so dire that he must employ force without first giving a command and/or giving a suspect an opportunity to comply with the command. Those circumstances are not present here. Allen's own testimony – that he gave the "spit-it-out" command and fired his taser only after Bibbs disobeyed – shows that Allen believed he had time to issue a command and to allow Bibbs an opportunity to comply with the command.

[5] *See, e.g., Brown v. Weber*, 555 Fed. App'x 550, 554-55 (6th Cir. 2012) (rejecting argument that officers reasonably used taser to gain suspect's compliance with their orders "because there simply was no time for [the suspect] to comply with the officers' directions); *Kijowski*, 372 Fed. App'x at 599 (same); *McCaig v. Raber*, 2012 WL 1032699 at *4 (W.D. Mich. Mar. 27, 2012) ("If [the defendant officer] did not give [the plaintiff suspect] ample opportunity or ability to comply with his verbal command prior to engaging in the takedown maneuver, his actions could be viewed as objectively unreasonable"); *Watkins v. Kanitz,* 2004 WL 3457634 at *6 (W.D. Mich. Sept. 24, 2004) (denying summary judgment on claim of excessive force where plaintiff testified that officer began hitting her without giving her any time to comply with command to exit her vehicle).

14

repeatedly and within a very short period of time as Allen was yelling at Bibbs to spit out the white substance and (2) during this time, Bibbs was helpless on the ground with saliva spewing from his mouth. From these facts, is far from clear that Allen gave Bibbs a sufficient opportunity to comply with the "spit-it-out" command. Accordingly, Allen is not entitled to summary judgment on the ground that he reasonably used the taser as a means of securing compliance with that command.

The primary case cited by Allen to justify his use of the taser to prevent Bibbs from swallowing the suspected cocaine actually supports the conclusion that his use of force was unreasonable. Allen cites *Monday v. Oullette*, 118 F.3d 1099 (6th Cir. 1997), for the proposition that: "[t]his Circuit has recognized that the use of non-lethal force is allowable to take custody of a suspect who presents a danger to himself." (Allen Reply Br. at 5, Pg. ID 296.) In *Monday*, police were called to a residence after receiving a report that the plaintiff had ingested an overdose of pills. The police spoke with the plaintiff for "about twenty minutes." *Id.* at 1101. After the plaintiff refused to go to the hospital voluntarily, an officer warned him that he would be sprayed with pepper spray if he did not cooperate. *See id.* When the plaintiff still refused, the officer "sprayed [him] in the face with a single blast of pepper spray." *Id.* The Sixth Circuit held that the officer's single use of the pepper spray was reasonable, in part, because he tried to reason with the plaintiff

15

and warned plaintiff before using the pepper spray. *See id.* at 1104-1105. *Monday* thus underscores that force may be justified to secure compliance with an order where the police allow a reasonable opportunity to comply with the order – which, Bibbs insists, did not happen here.

For all of these reasons, the Court concludes that "if [Bibbs'] version of events is correct, [Allen] deployed his Taser unreasonably, thereby violating [Bibbs'] Fourth Amendment right to be free from the use of excessive force." *Kijowski*, 372 Fed. App'x at 600.

### C.   Bibbs' Right to Be Free From Multiple Tasings When He Was Not Resisting Arrest Was Clearly Established (Prong Two)

Allen argues that even if his use of the taser was unreasonable, he is nonetheless entitled to summary judgment because Bibbs right to be free from a taser shock under the circumstances presented here was not clearly established. The Court rejects that argument. Given the Sixth Circuit's clear guidance in myriad taser cases, "a reasonable official [in Allen's position] would [have understood] that what he [was] doing violate[d] [Bibbs'] right[s]." *Kijowski*, 372 Fed. App'x at 600-601 (internal quotation marks omitted).

The Sixth Circuit has repeatedly addressed the use of tasers by police officers in the context of a qualified-immunity analysis. Its summary of the law in this Circuit as of May 2010 (which did not substantially change before the June 2011 traffic stop at issue in this case) is worth quoting at length:

16

Looking at cases before May 2010, this Court's analysis of whether a defendant's right to be free from a taser shock was clearly established can be split into two lines of cases. First, this Court has generally found no clearly-established right where the suspect is actively resisting arrest, which can include physically resisting, fleeing the scene despite police orders, and not responding to orders to move. *Hagans v. Franklin Cnty. Sheriff's Office,* 695 F.3d 505, 509 (6th Cir. 2012) (finding it was not clearly established in May 2007 that using a taser repeatedly on a suspect actively resisting arrest and refusing to be handcuffed amounted to excessive force); *Caie v. W. Bloomfield Twp.,* 485 Fed.Appx. 92, 95–96 (6th Cir. 2012) (right not clearly established in 2009 when suspect refused to follow police orders and move his arms from under his body); *Cockrell v. City of Cincinnati,* 468.491, 495 (6th Cir. 2012) (holding no clearly established right in 2008, because flight is a form of resistance); *Williams v. Ingham,* 373 Fed.Appx. 542, 548 (6th Cir. 2010) (officers acted reasonably by tasing suspect who would not move his hands from under his body); *Russo v. City of Cincinnati,* 953 F.2d 1036, 1044 (6th Cir. 1992) (finding qualified immunity for police officers who tased a potentially homicidal man who stood a few feet away with knives in each of his hands).

In a second set of cases, this Court has found that plaintiffs' right to be free from a taser shock is clearly established where they have done nothing to resist arrest or are already detained. For example, in *Thomas v. Plummer,* the suspect was repeatedly told to get down on the ground. *Thomas,* 489 Fed.Appx. at 118. When the suspect responded by only dropping to her knees with her hands in the air, the police tased her. *Id.* This Court held that the suspect "posed absolutely no threat" as she hadn't offered any "active resistance." *Id.* at 126. Similarly in *Kijowski v. City of Niles,* we found the right to be free from excessive force clearly established when police dragged an unresisting man from his truck and immediately tasered him. *Kijowski,* 372 Fed.Appx. at 601. In some cases, tasing a previously resistant and violent suspect who no longer poses a threat to the police officers also violates clearly established law. *Landis,* 297 Fed.Appx. at 461 (finding that

17

> where the defendant released the police officer and walked into the woods there was "no longer a threat to any of the officers" because the defendant was "not belligerent or verbally resistant" and did not have a weapon).

*Correa v. Simone*, 528 Fed. App'x at 535. Just this year, the Sixth Circuit reiterated that a suspect who does not pose a threat and is not resisting arrest has a clearly-established right not to be tased. *See Brown*, 555 Fed. App'x at 551. Indeed, Allen himself properly concedes that "a suspect who is not resisting arrest or is already detained has a clearly established right not to be tased." (Allen Mot. and Br. at 24, Pg. ID 73.)

As described in detail above, viewing the evidence in the light most favorable to Bibbs, the Court must conclude that Bibbs was *not* resisting arrest, was not disobeying orders, and did not pose a threat at the time Allen tased him. Under these circumstances, Bibbs' right not to be tased repeatedly was clearly established. *See Kijowski*, 372 Fed. App'x at 601 (internal quotation marks omitted) (finding "little difficulty in concluding the right [the police officer] allegedly violated was clearly established" because "[e]ven without precise knowledge that the use of the taser would be a violation of a constitutional right, [the officer] should have known that based on analogous cases that his actions were unreasonable").

The Sixth Circuit's application of the "clearly-established" test in *Correa* is particularly instructive. In that case, a police officer tased "a non-resistant but

18

possibly armed suspect." *Correa*, 528 Fed App'x at 535. The officer argued that the suspect had no clearly established right to be free from a taser shock "because none of [the Sixth Circuit's] cases has dealt specifically with a suspect who was armed with a firearm." *Id*. The Sixth Circuit "disagree[d]." *Id*. It explained:

> Simone's argument is that the law regarding tasing a non-resistant but possibly armed suspect was not clearly established because none of our cases has dealt specifically with a suspect who was armed with a firearm. We disagree. As noted above, this Court's precedent has emphasized the concept of resistance when considering whether an officer's conduct violates established law. As we noted in *Wysong,* 260 Fed.Appx. at 856, "the right to be free from physical force when one is not resisting the police is a clearly established right." The absence of case law specifically addressing gun possession does not bear on whether the law is clearly established. ***The precedent in this Circuit clearly holds that a police officer must encounter some level of resistance by the defendant to justify using a taser.*** The mere possession of a gun is not, in and of itself, resistance unless coupled with something more, such as a physical or verbal action. Holding otherwise would mean ignoring a significant amount of precedent establishing the importance of a defendant's resistance to an officer's calculation of whether to use his or her taser. Using a taser on a potentially armed suspect who is complying with all officer commands and not resisting violated clearly established law as of May 2010.

*Id.* at 535-36 (emphasis added).

Like the suspect in *Correa*, Bibbs was complying with all commands and not resisting arrest when he was tased (at least when the facts are viewed in his favor). Thus, as in *Correa*, Bibbs had a clearly-established right not to be tased.

19

Accordingly, Allen is not entitled to summary judgment on his qualified immunity defense.

## CONCLUSION

For all of the reasons stated in this Opinion and Order, Allen's Motion for Summary Judgment (ECF #12) is hereby **DENIED**.

                s/Matthew F. Leitman
                MATTHEW F. LEITMAN
                UNITED STATES DISTRICT JUDGE

Dated: August 13, 2014

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on August 13, 2014, by electronic means and/or ordinary mail.

                s/Holly A. Monda
                Case Manager
                (313) 234-5113