UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JERRY L. BIBBS,

    Plaintiff,
                                      Case No. 13-cv-10362
                                      Hon. Matthew F. Leitman
v.

DAVID ALLEN,

    Defendant.
_____/

## ORDER DENYING PLAINTIFF JERRY BIBBS' MOTION FOR NEW TRIAL (ECF #46)

### Introduction

This is an excessive force case brought under 42 U.S.C. § 1983. Plaintiff Jerry Bibbs ("Bibbs") alleges that Defendant David Allen ("Allen"), a City of Center Line police officer, violated his (Bibbs') Fourth Amendment rights by tasing Bibbs multiple times during a traffic stop in 2011. The case was tried before a jury in December 2014, and the jury returned a verdict in Allen's favor. Bibbs now moves for a new trial. (*See* the "Motion," ECF #46.)

At trial, Bibbs and Allen offered far different versions of the incident in question. Bibbs testified that Allen conducted a traffic stop; ordered Bibbs out of the car; and, before giving Bibbs an opportunity to comply with his commands, tased Bibbs six times even though Bibbs posed no threat and was not attempting to

1

flee.  Allen testified that he conducted a traffic stop; ordered Bibbs out of the car; saw Bibbs place a white substance in his mouth; believed the white substance was a potentially lethal dose of cocaine; ordered Bibbs to spit the substance out (at least twice); and deployed his taser in an effort to secure compliance with his "spit-it-out" order only after Bibbs disregarded that order.  Allen said that while he may have pulled the trigger on his taser six times, only one of the pulls – the last one – resulted in the delivery of a shock to Bibbs.  The key issues in dispute at trial included: (1) did Allen give Bibbs a sufficient opportunity to comply with the "spit-it-out" order prior to first firing the taser at Bibbs; (2) did the taser deliver multiple shocks to Bibbs or just a single shock; and (3) was Bibbs helpless and sprawled on the ground at the time of taser shock(s), or was he attempting to crawl away from Allen and continuing to disobey Allen's commands?

Bibbs' claims survived summary judgment because, at that stage, the competing testimony on all these key disputed issues had to be viewed in Bibbs' favor.  That was obviously not the case at trial.  At trial, Allen's version of events was amply supported by the evidence and was, in fact, more credible than Bibbs' version.  Accordingly, the jury did not commit any error in returning a verdict against Bibbs.  The Court will **DENY** Bibbs' Motion.[1]

---

[1] The Court deems this matter appropriate for decision without oral argument.  *See* Fed. R. Civ. P. 78(b); E.D. Mich. L.R. 7.1(f)(2).

## Analysis

Bibbs seeks a new trial under Rule 59(a) of the Federal Rules of Civil Procedure on the ground that the jury's verdict was against the great weight of the evidence. "This Rule requires a new trial only when a jury has reached a seriously erroneous result as evidenced by among other things the verdict being against the weight of the evidence. But granting a new trial on this ground is a rare occurrence. Therefore, [a court should] uphold the verdict if it was one which the jury reasonably could have reached; [a court] cannot set it aside simply because [it] think[s] another result is more justified." *Innovation Ventures, LLC v. N2G Distributing, Inc.*, 763 F.3d 524, 534 (6th Cir. 2014) (internal citation and punctuation omitted). Moreover, when reviewing a motion for a new trial, the Court "must compare the opposing proofs and weigh the evidence." *Werner v. Bell Family Medical Center, Inc.*, 529 Fed. App'x 541, 542 (6th Cir. 2013) (quoting *Duncan v. Duncan,* 377 F.2d 49, 52 (6th Cir. 1967)); *see also Whitehead v. Bond*, 680 F.3d 919, 928 (7th Cir. 2012) ("When considering whether the verdict was against the manifest weight of the evidence, the district court has the power to get a general sense of the weight of the evidence, assessing the credibility of witnesses and the comparative strength of the facts put forth at trial") (internal quotation marks omitted).

The jury in this case was instructed as follows (without objection by Bibbs):

> At the time of the incident and events that were at issue in this case, it was clearly established Fourth Amendment law that a suspect who does not pose a threat, is not attempting to flee, is not resisting arrest, and, if able to do so, is complying with the officer's orders, has a clearly established right not to be tased.

In his Motion, Bibbs insists that the evidence at trial established that he was tased multiple times and that at the time of these repeated tasings, he was not a threat to Allen, was not attempting to flee, was not resisting arrest, and was not given a sufficient opportunity to comply with the "spit-it-out" command. Bibbs thus insists that the jury should have found that Allen used excessive force against him.

Bibbs' argument ignores the substantial and credible evidence presented at trial that contradicted his theory. There was clear trial testimony from two witnesses that Allen *did* give Bibbs a sufficient opportunity to comply with the "spit-it-out" command before deploying his taser. Angela Rowe, Bibbs' former girlfriend who was at the scene of the incident, testified that she heard Allen order Bibbs to spit it out more than once before she heard Bibbs fall to the ground after Allen first pulled the trigger on his taser. Indeed, Rowe was so concerned about Bibbs' non-compliance with the "spit-it-out" command that she urged Bibbs to comply with the command before Allen deployed the taser. Likewise, Allen clearly testified that he ordered Bibbs "on several occasions" to spit out the white

4

substance before deploying his taser, and Allen said that he expressly told Bibbs that he (Bibbs) would be tased if he did not spit out the substance in his mouth. (*See* Allen trial testimony, ECF #47-2 at 64-65, Pg. ID 885-886.)  Bibbs' testimony diverged sharply from Allen's and Rowe's on this point.  Bibbs testified that Allen fired the taser without any warning and before directing him to spit out the white substance.  The jury was clearly free to accept the testimony of Allen and Rowe (a witness called *by Bibbs*) that Allen gave a command and a warning before deploying his taser.  Indeed, the Court found the testimony of Rowe and Allen to be credible on this point.

   Bibbs argues that even if Allen gave him a sufficient opportunity to comply with the "spit-it-out" command before *first* using the taser, Allen failed to give Bibbs an opportunity to comply with that command prior to the next five tasings. In Bibbs' words, "the record establishes that (1) Allen tased Bibbs repeatedly and within a very short period of time [(*see* Bibbs' Trial Exhibit 1 and attached chart, ECF #46-8)] as Allen was yelling at Bibbs to spit out the white substance and (2) during this time, Bibbs was helpless on the ground with saliva spewing from his mouth.  From these facts it is far from clear that Allen gave Bibbs a sufficient opportunity to comply with the spit-it-out command." (Bibbs' Motion, ECF #46 at 26-27, Pg ID 519-520.)  But contrary to Bibbs' assertion, the record did not clearly establish that Allen successfully deployed his taser on Bibbs multiple times or that

5

Bibbs was suffering from the effects of a tasing as he was on the ground hearing Allen's repeated commands to spit out the white substance.

Indeed, there was credible evidence that while Allen may have pulled the trigger on his taser six times, only the final pull delivered a shock to Bibbs. Allen and Officer William Dempsey ("Dempsey") from the Center Line Police Department, a certified taser instructor (*see* Dempsey trial testimony, ECF #47-3 at 68, Pg. ID 900), explained that trigger pulls do not always result in the delivery of a shock. Allen and Dempsey testified that when a taser is used in "dart stun" mode – in which two darts are shot into a suspect's skin or clothing – a trigger pull will result in the delivery of a shock only if both of darts successfully attach to the suspect or to his clothing (and the clothing is sufficiently close to the skin) which completes the electrical circuit needed to deliver a shock. (*See, e.g, id.* at 71, 76, Pg. ID 901-902.) Allen testified that the taser was in "dart stun" mode the first four times he pulled the trigger, and that the darts could not have successfully attached to Bibbs because Bibbs was not reacting in the way that a person would react when successfully shocked by a taser. (*See* Allen trial testimony at 71-72, Pg. ID 900-901.) Officer Dempsey's testimony further supports Allen's claim that the first four trigger pulls did not deliver a shock to Bibbs. Dempsey testified that when he arrived at the scene, he observed and spoke with Bibbs, and Bibbs'

behavior was not "consistent with someone who had been tased five times." (Dempsey trial testimony at 27, Pg. ID 906.)

Finally, Bibbs' own testimony supports Allen's claim that the first four trigger pulls did not deliver a shock. Officer Dempsey explained that a taser makes a "clicking" noise when the trigger is being pulled but a shock is *not* being delivered (*see id.* at 89-90, Pg. ID 908-909), and Bibbs testified that he heard that precise sound during the alleged repeated tasings.[2] This evidence was more than sufficient for a jury to credit Allen's assertion that the first four trigger pulls failed to deliver any shocks to Bibbs.

Allen's final two trigger pulls occurred while he had the taser in "drive stun" mode – in which the taser is placed directly onto the skin or clothing of a suspect. There was evidence presented at trial to support Allen's claim that only the second of these pulls delivered a shock to Bibbs. Allen testified that he first attempted a "drive stun" to the Bibbs' "[r]ight buttocks area." (Allen trial testimony at 73, Pg. ID 892.) But Allen testified that after this attempt, Bibbs continued to move away

---

[2] Allen testified that he did not hear the clicking sound. (Allen trial testimony at 79-80, Pg. ID 895-896.) Bibbs insists that that testimony confirms that the taser *must* have been delivering a shock during the first four trigger pulls. (*See* Bibbs Motion at 20, Pg. ID 513.) Not so. It is possible that the taser was making the clicking sound and that Allen simply did not hear that sound in the "heat" of his interaction with Bibbs – during which he was screaming commands at Bibbs. While the fact that Allen did not hear the clicking sound may support Bibbs' argument that the taser *was* delivering shocks during the first four trigger pulls, that fact did not compel the jury to disregard the substantial other evidence – described above – that indicated that the first four pulls did *not* deliver a shock.

7

from him and did not "respond in the way [Allen] would expect somebody to respond if the taser was effective." (*Id.* at 73-74, Pg. ID 892-893.) Allen testified that at that point, he applied a second "drive stun" to Bibbs' "shoulder area." (*Id.* at 74, Pg. ID 893.) Allen said that it was then, for the first time, that the taser successfully delivered a shock to Bibbs. (*See id.* at 74-75, Pg. ID 893-894.) In short, there was more than sufficient evidence presented at trial to rebut Bibbs' claims that Allen shocked him six times with his taser and that the repeated alleged tasings prevented Bibbs from complying with the "spit-it-out" command.

Allen's testimony, which the Court found to be very credible, persuasively established that Allen's actions were objectively reasonable during his encounter with Bibbs. *See Graham v. Connor*, 490 U.S. 386 (1989). The jury reasonably chose to credit Allen's testimony that Bibbs repeatedly ignored Allen's pre-tasing commands and that Allen's first five attempts to deploy his taser and stun Bibbs were unsuccessful. Bibbs is therefore not entitled to a new trial on the ground that the jury adopted Allen's version of events.

Bibbs' final argument is based upon his counsel's interactions with jurors after they returned their verdict. Bibbs' counsel says that his communications with the jurors show that "the Jury simply was not listening." (Bibbs' Motion at 28, Pg. ID 521.) This argument is both wrong and inappropriate. The Court observed the jury throughout the trial. The jurors carefully listened to all of the testimony and

8

arguments in this case, and they returned an eminently reasonable verdict. Indeed, the Court would have reached the very same conclusion as the jury if this case had been tried to the Court. Moreover, the Court allowed counsel to speak to the jurors as a courtesy to counsel – as a means to assess which arguments worked well, which tactics were successful, and how their presentations could be improved in future trials. The Court did not allow counsel to speak with the jurors to provide an opportunity to gather support for an attack on their verdict. Indeed, Rule 606(b) of the Federal Rules of Evidence expressly precludes jurors from providing testimony in connection with "an inquiry into the validity of a verdict."[3] *See also Warger v. Shauers*, 135 S.Ct. 521 (2014) (explaining that FRE 606(b)(1) is a broad proscription against the use of juror testimony in connection with an inquiry into a verdict). This is yet another reason that Bibbs' unfair attack on the jurors in this case – based upon their own words – does not entitle Bibbs to a new trial.

## Conclusion

Accordingly, for all of the reasons stated above, Bibbs' Motion for New Trial (ECF #46) is **DENIED**.

s/Matthew F. Leitman  
MATTHEW F. LEITMAN  
UNITED STATES DISTRICT JUDGE

Dated: February 4, 2015

---

[3] There are limited exceptions to this rule not applicable here. *See* FRE 606(b)(2).

      I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on February 4, 2015, by electronic means and/or ordinary mail.

                                                    s/Holly A. Monda  
                                                    Case Manager  
                                                    (313) 234-5113